IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOSEPH A. SOTTORIVA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-3118 |
| | ) | |
| ROCCO J. CLAPS, Director of the | ) | |
| Illinois Department of Human Rights, | ) | |
| and DANIEL W. HINES, | ) | |
| Comptroller of the State of Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendant Daniel W. Hynes' Motion to Dismiss (d/e 14).[1] Plaintiff Joseph A. Sottoriva, an employee of the Illinois Department of Human Rights (the Department), filed the pending three-count Complaint (d/e 1) against Rocco J. Claps, Director of the Department, and Daniel W. Hynes, Comptroller of the State of Illinois, after money was involuntarily withheld from his paychecks. Hynes asserts

---

[1] The Court notes that while the Complaint references Defendant Daniel Hines, the correct spelling of the Comptroller's name is Hynes. For consistency, the Court will use the correct spelling throughout this Opinion.

1

that the claims against him should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the Motion to Dismiss is denied.

## BACKGROUND

The following facts are taken from the allegations of the Complaint, which the Court must accept as true in analyzing the Comptroller's Motion to Dismiss.  See Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996).

Plaintiff has been employed as a Human Rights Investigator II with the Department from 2003 to the present.  Plaintiff is also a member of the United States Army Reserve.  He was called into active duty from January 17, 2003, to August 17, 2004.  Pursuant to Executive Order of the Governor of Illinois, any full-time employee of the State of Illinois, such as Plaintiff, who is mobilized to active duty "shall continue to receive his or her regular compensation as a State employee, plus any health insurance and other benefits he or she is currently receiving, minus the amount of his or her base pay for military activities."  Complaint, Ex. 1, 2003-6 Executive Order on Compensation for Military Personnel, p.1.

Upon his return from active duty to the Department, Plaintiff was informed that the Department believed that he had been overpaid while on active duty and, further, that the Department intended to recoup the alleged overpayments. Plaintiff attempted to resolve this issue with the Department, but he was unable to reach an agreement as to the amount that he owes. A meeting was held on September 1, 2005, between Plaintiff and Chief Legal Counsel for the Department, Ray Luna. Department officials presented no evidence at the September 1, 2005, meeting and declined to provide an accounting for the amounts claimed, despite a specific request for an accounting from Plaintiff and his counsel. Instead, Luna demanded that Plaintiff accept one of three options, all of which included an agreement to repay $24,105.03. The options are outlined in a Memorandum dated August 30, 2005, which was presented to Plaintiff at the meeting. A copy of the Memorandum is attached as Complaint, Exhibit 2.

By letter dated September 6, 2005, Plaintiff, through counsel, again sought a proper accounting for the alleged overpayment. Luna responded by letter dated September 13, 2005. <u>Complaint</u>, Ex. 3. Luna informed Plaintiff's counsel that the Department was not in a "position to

compromise, settle or negotiate the amount owed by Joe Sottoriva." Id. Luna informed Plaintiff's counsel that "payroll records for the amount owed and withheld have been provided to Joe on three other occasions." Id. Luna advised Plaintiff's counsel that because Plaintiff failed to choose one of the three repayment options presented at the meeting, the Department would be instituting involuntary withholding.

In late September 2005, the Department submitted an involuntary withholding claim to the Office of the Illinois Comptroller. The Office of the Comptroller sent Plaintiff written notice of the Department's claim dated September 26, 2005. Complaint, Ex. 4. The notice stated as follows:

> THE HUMAN RIGHTS DEPT OF [sic] HAS ADVISED THE OFFICE OF THE COMPTROLLER THAT YOU OWE MONEY FOR SALARY OVERPAYMENT.
>
> PURSUANT TO ILLINOIS LAW (15 ILCS 405/10.05-10.05A), THE COMPTROLLER IS REQUIRED TO WITHHOLD ALL ELIGIBLE PAYMENTS UNTIL THE CLAIM HAS BEEN SATISFIED. . . .
>
> IF YOU HAVE ALREADY CONTACTED THE CLAIMING AGENCY AND STILL DO NOT AGREE WITH THE CLAIM, YOU MAY FILE A PROTEST BY WRITING THE OFFICE OF THE COMPTROLLER; . . . . THE PROTEST SHOULD CONTAIN A LETTER DESCRIBING YOUR REASONS FOR PROTEST AND ANY DOCUMENTS OR RECEIPTS THAT SUPPORT YOUR POSITION. . . . IF YOU DO NOT FILE A WRITTEN PROTEST WITHIN 30 DAYS FROM THE DATE

> OF THIS NOTICE, THE WITHHELD AMOUNT WILL BE SENT TO HUMAN RIGHTS DEPT OF [sic] AS PAYMENT ON THE CLAIM.

<u>Id</u>. Notices of withholding were issued to Plaintiff for each pay period from late September 2005 through January 2006.

After receiving each notice, Plaintiff, through counsel, filed a written protest with the Office of the Comptroller. A copy of the form protest is attached at Complaint, Exhibit 5. The Office of the Comptroller responded in writing, as set out in Complaint, Exhibit 6. The letter, dated October 19, 2005, states as follows:

> Receipt of your letter of protest on behalf of Joseph Sottoriva is hereby acknowledged. Department of Human Rights (DHR) was forwarded copies of your protest along with any supporting documentation. DHR has been requested to provide documentation in support of its claim to both this office and you.
>
> If DHR's response supports the debt, the protested monies will be released to the DHR within approximately 30 days. If you disagree with DHR's documented response, you must notify our office within those 30 days.

<u>Complaint</u>, Ex. 6.

By letter dated January 9, 2006, the Office of the Comptroller notified the Plaintiff that, based on the documentation provided by the Department, the decision was made to release the money to the Department. <u>Complaint</u>,

Ex. 7. The letter from the Office of the Comptroller relies on a December 2, 2005, letter from the Department. According to the Office of the Comptroller's letter, the Department's "letter clearly states the reason Mr. Sottoriva was overpaid, the dollar amount he was overpaid and the time period this overpayment occurred." Id.

Plaintiff, through counsel, responded to the Office of the Comptroller by letter dated January 19, 2006. Complaint, Ex. 8. Plaintiff's letter states as follows:

> The factual material provided to you is incorrect and unsubstantiated. I had previously written asking for a hearing. Mr. Sottoriva has not received a hearing and has not been given an opportunity to adequately dispute the basis on which the Department of Human Rights incorrectly calculated his pay. Your decision also does not address the concerns that we raised in the appeal that the result of all of this is to overtax Mr. Sottoriva based on incorrect figures, including trying to recoup more than Mr. Sottoriva's own base pay that he earns with the State of Illinois. I am writing to again request on behalf of Mr. Sottoriva a hearing at which witnesses can be presented, cross examination of witnesses who compiled the information can be conducted and Mr. Sottoriva can be given an adequate opportunity to pursue his appeal.

Id. The Office of the Comptroller responded by letter dated January 24, 2006. Complaint, Ex. 9. The January 24, 2006, letter informed Plaintiff as follows:

6

> The Office of the Comptroller acts on behalf of an agency. We cannot add, delete or change information on a debt without an agency directing our office to do so. Nor can we address any appeal request. That is why we must always contact the agency to receive directions as to the validity of any claim. Our office then follows the guidance of the agency.

Id. The Office of the Comptroller indicated that Plaintiff's correspondence and appeal request would be forwarded to the Department for response. Id.

By letter dated February 21, 2006, the Chief Legal Counsel for the Department informed Plaintiff's counsel that the Office of the Comptroller was ceasing the withholding and would release funds held in protest to the Plaintiff. The letter notes: "This Office will reestablish the claim upon the Department's demonstration that due process and an opportunity to be heard was provided to the debtor in establishment of the amount of the claim." Complaint, Ex. 10.

On May 2, 2006, Plaintiff was called to a meeting with Department officials. At that meeting, Plaintiff was told that the Department would begin deducting $438.00 from his gross pay each pay period until $24,105.03 had been collected. No administrative hearing was offered at the May 2, 2006, meeting to determine the amount of overpayment. Plaintiff informed the Department that he did not consent to withholding.

7

Beginning in May 2006, Defendant Claps issued false certifications to the Office of the Comptroller in order to withhold money from Plaintiff's gross salary with each paycheck. Plaintiff asserts that Illinois law does not provide a hearing process to allow an employee to challenge the certification process.

Plaintiff's Complaint seeks injunctive relief against Defendant Hynes.[2] Plaintiff alleges that Hynes has failed to mandate and require proof of a pre-deprivation hearing as a condition precedent to withholding money from employee salaries for obligations that have not been established by a civil or administrative adjudication. Plaintiff asserts that absent injunctive relief, "the Comptroller will continue to allow agencies of the State of Illinois to withhold wages from its employees without due process of law." Complaint, ¶ 32. Plaintiff asks the Court to enjoin Defendants from withholding wages due to Plaintiff and seeks an award of attorney's fees and costs.

## ANALYSIS

As an initial matter, the Court notes that Hynes has attached two exhibits to his Motion to Dismiss. Exhibit 1 is an Affidavit of Steven

---

[2] While Count I is entitled "Injunctive and Declaratory Relief," Plaintiff's prayer for relief seeks only injunctive relief.

Valasek, an employee of the Office of the Comptroller. This Affidavit is material outside the Complaint and is not referenced in the Complaint or central to Plaintiff's claims; therefore, the Court will not consider it in ruling on the Motion to Dismiss. See Menominee Indian Tribe of Wisconsin v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998). Exhibit 2 is a copy of a Text Order in the instant case, which the Court may properly consider in its analysis.

A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996). Hynes asserts that dismissal is appropriate because: (1) the doctrine of qualified immunity bars Plaintiff's claims, (2) Plaintiff fails to state a due process claim against him, and (3) Plaintiff fails to state a claim for injunctive relief.[3] These arguments are unpersuasive.

---

[3] At one point in his Memorandum, Hynes asserts that "the doctrine of sovereign immunity insulates the Comptroller from suit." Memorandum of Law in Support of Defendant's Motion to Dismiss (d/e 15), p. 2. Hynes fails to develop an argument relating to this issue, and the Court assumes from the context of the statement that Hynes intended to refer to qualified, rather than sovereign, immunity. However, to the extent Hynes is raising the issue of sovereign immunity, it does not bar Plaintiff's claims. The Court has jurisdiction to grant prospective, injunctive relief against a state official in order to prevent a continuing violation of federal law. Green v. Mansour, 474 U.S. 64, 68 (1985).

The Court turns briefly to Hynes' qualified immunity argument. As the Court previously noted, Plaintiff seeks only injunctive relief against Defendant Hynes. The Seventh Circuit has recognized that "[t]he doctrine of qualified immunity does not apply to claims for equitable relief." Denius v. Dunlap, 209 F.3d 944, 959 (7th Cir. 2000) (citing cases). Therefore, the doctrine of qualified immunity does not bar Plaintiff's claims against Hynes. Hynes' request for dismissal on this basis is denied.

Hynes asserts that the allegations of the Complaint reveal that he has faithfully followed the applicable state laws and regulations and, as a result, he asserts that Plaintiff fails to state a due process claim. The requirement of "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). The Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." Id. Hynes does not contest Plaintiff's assertion that the offset deprived him of a property interest. Rather, Hynes asserts that the applicable state laws and regulations comport with due process. Because the Complaint alleges that Hynes

10

followed these laws and regulations, Hynes asserts that Plaintiff's claims against him should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

The offset procedure at issue in the instant case is established under 15 ILCS § 405/10.05, which provides as follows:

> Whenever any person shall be entitled to a warrant or other payment from the treasury or other funds held by the State Treasurer, on any account, against whom there shall be any account or claim in favor of the State, then due and payable, the Comptroller, upon notification thereof, shall ascertain the amount due and payable to the State, as aforesaid, and draw a warrant on the treasury or on other funds held by the State Treasurer, stating the amount for which the party was entitled to a warrant or other payment, the amount deducted therefrom, and on what account, and directing the payment of the balance; which warrant or payment as so drawn shall be entered on the books of the Treasurer, and such balance only shall be paid. The Comptroller may deduct the entire amount due and payable to the State or may deduct a portion of the amount due and payable to the State in accordance with the request of the notifying agency. No request from a notifying agency for an amount to be deducted under this Section from a wage or salary payment, or from a contractual payment to an individual for personal services, shall exceed 25% of the net amount of such payment. "Net amount" means that part of the earnings of an individual remaining after deduction of any amounts required by law to be withheld. . . . Whenever the Comptroller draws a warrant or makes a payment involving a deduction ordered under this Section, the Comptroller shall notify the payee and the State agency that submitted the voucher of the reason for the deduction and he or she shall retain a record of such statement in his or her records. . . .

15 ILCS § 405/10.05.  The applicable corresponding regulations provide:

11

b)   The Comptroller will not process a claim under Section 10.05 of the Act until the Comptroller has received notification from the State agency that the debt has been established through notice and opportunity to be heard.

c)   For purposes of Section 10.05 of the Act and this Part promulgated pursuant thereto, "notification" of an account or claim eligible to be offset shall be deemed to occur when the State agency in favor of which the account or claim has arisen has submitted to the Comptroller, the following information:

   1)   the name and Social Security Number or Federal Employer's Identification Number of the person against whom the claim exists;
   2)   the amount of the claim then due and payable to the state;
   3)   the reason why there is an amount due to the State (i.e., income tax liability, overpayment, etc.);
   4)   the time period to which the claim is attributable;
   5)   the fund to which the debt is owed;
   6)   a description of the type of notification given to the person against whom the claim exists and the type of opportunity to be heard afforded such person;
   7)   a statement as to the outcome of any hearings or other proceedings held to establish the debt, or a statement that no hearing was requested; and
   8)   the date of final determination of the debt.

d)   Such statement shall be executed by the person or persons who are authorized to issue, certify and approve vouchers for the agency under Sections 10 and 11 of the State Finance Act [30 ILCS 105/10 and 11]. The above specified vouchering authority may delegate to a responsible person or persons the authority to execute the statement of the claim required by this Section. This delegation of authority shall be made on forms provided by

> the Comptroller and shall contain a signature sample of the person(s) to whom the delegation is made.

74 Ill. Admin. Code § 285.1102.

Hynes relies on a 1988 Opinion from the United States District Court for the Northern District of Illinois in <u>Toney v. Burris</u>, 699 F.Supp. 687 (N.D. Ill. 1988) (1988 <u>Toney</u> Opinion). The 1988 <u>Toney</u> Opinion was issued after a remand from the Seventh Circuit Court of Appeals. A brief summary of the history of the <u>Toney</u> litigation is instructive in analyzing Hynes' argument. Toney was a state of Illinois employee whose paychecks were being offset to recoup the balance due the State of Illinois on his student loans. Toney filed a Complaint pursuant to 42 U.S.C. § 1983 against Illinois Comptroller Roland Burris, alleging that the offset provision violated due process. The District Court certified a class of all persons who have had or will have their funds withheld by the Comptroller under the State Comptroller Act. <u>See</u> <u>Toney v. Burris</u>, 650 F.Supp. 1227 (N.D. Ill. 1986). The Court then granted Toney's motion for summary judgment, finding the relevant statute unconstitutional on its face and as applied. <u>Id.</u> at 1243. Burris appealed, and the Seventh Circuit remanded based on the fact that new regulations had been promulgated which may have resolved

the Constitutional issues. Toney v. Burris, 829 F.2d 622 (7th Cir. 1987).

In the 1988 Toney Opinion, the District Court recognized that "when the state, through its procedures, withholds wages of its employees to pay their personal unpaid debts and delinquent obligations, it is engaged in a taking that must be done in a manner that comports with the fairness concept of 'due process of law.'" Toney, 699 F.Supp. at 690-91. The Court further noted, "It has long and firmly been established that the procedure followed must require that before a taking occurs, both an adequate notice and a meaningful opportunity for the employee to be heard in opposition to it is afforded." Id. at 691. With these principles in mind, the Court examined the procedures applicable to Toney's case under the standard set out by the Supreme Court in Mathews, 424 U.S. at 319.

The District Court first noted the procedures employed by the agency seeking to collect from Toney, the Illinois State Scholarship Commission, and then the regulations governing the Office of the Comptroller. The Court determined that the regulations and procedures as a whole passed the Mathews test and, thus, provided Toney with due process. Toney appealed.

In this second appeal, the Seventh Circuit addressed the adequacy of the procedures at issue under Mathews. Toney v. Burris, 881 F.2d 450 (7th

14

Cir. 1989). The Seventh Circuit Opinion sets out the applicable versions of the Comptroller Act and the accompanying regulations as they relate to offsets by the Comptroller. Id. at 452-53. Those versions are in relevant part identical to the statute and regulations at issue in the present case. The Seventh Circuit Opinion also recites the regulations governing the Illinois State Scholarship Commission in its collection of defaulted loans. Id. at 453. In analyzing Toney's arguments, the Seventh Circuit determined that the Illinois State Scholarship Commission regulations provided "all the procedural protections one could reasonably ask for. Before a request is even sent to the Comptroller by the [Illinois State Scholarship Commission] the borrower has been given ample notice and opportunity to be heard." Id. The Court further noted that the Illinois State Scholarship Commission regulations provide a debtor with a "full panoply of procedural protections and opportunity for judicial review." Id. at 454. The Court concluded that "[o]ne opportunity for access to the full range of procedural protections is adequate to comport with due process," and refused to "require the Comptroller to duplicate the [Illinois State Scholarship Commission]'s efforts." Id. The Court noted, however, that many members of the certified class would have debts from agencies other than the Illinois State

Scholarship Commission. Thus, the Court remanded the matter a second time, for a determination of whether the order certifying the class remained appropriate.

On remand, the District Court examined the regulations governing the Comptroller and the rules of the Comptroller's Office. Toney v. Burris, 1990 WL 91451, *2-3 (N.D. Ill. June 25, 1990). The Court determined:

> the Comptroller's procedural protections ensure that any debt owed to any state agency must be established through notice and an opportunity to be heard, before an offset can be implemented. If an agency fails to follow these procedures, the comptroller will not process the offset. These revised procedures are available to every potential class member who has the same kind of claim as the plaintiff Toney claimed to have had here regardless of the state agency involved. The class as certified early in the case would not sustain an injury because the amended regulations ensure that due process will be met.

Id. at *3.

Although Hynes fails to cite the 1990 unpublished decision, he asserts that the Northern District of Illinois has determined that the Comptroller's procedures comport with due process. The Toney proceedings, however, are inapposite to the facts of the instant case. Under the allegations of the pending Complaint, Plaintiff has, in fact, received no due process. Plaintiff is not seeking an order requiring the Comptroller to duplicate procedures

16

afforded by the Department. According to the Complaint, the Comptroller ceased withholding in February 2006, subject to reinstatement upon the Department's demonstration that Plaintiff was afforded notice and an opportunity to be heard in establishing the amount of the claim. Plaintiff alleges that he was called to a meeting with Department officials on May 2, 2006, but was not offered an administrative hearing to determine the amount owed. According to Plaintiff, beginning in May 2006, Defendant Claps issued false certifications to the Office of the Comptroller. Plaintiff asserts that Illinois law fails to provide a hearing process to challenge the certification process. Thus, the allegations of the Complaint, if true, are sufficient to establish that Plaintiff's wages are being withheld without due process, and the regulations at issue fail to ensure due process as applied in Plaintiff's case. In such a case, Plaintiff would be entitled to an order enjoining Defendant Hynes from withholding money from his paychecks. Hynes' request for dismissal on this basis is denied.

Hynes further asserts that Plaintiff fails to state a claim for injunctive relief based on the fact that the Comptroller is not currently withholding any money from Plaintiff's paycheck for repayment of the alleged debt. Hynes cites this Court's July 11, 2006, Text Order, which adopts the

parties' Joint Stipulation (d/e 12) and orders that "absent further application to this Court, Defendants, their officers, employees, and agents shall not, during the pendency of this action, withhold from the wages of Joseph A. Sottoriva, any amounts in repayment of the overpayment challenged in this action, until and unless there is a final resolution of this cause in Defendants' favor." Text Order dated July 11, 2006. The fact that Plaintiff has attained temporary, interlocutory relief does not bar his claim for an injunction. The Complaint alleges that absent a permanent injunction, "the Comptroller will continue to allow agencies of the State of Illinois to withhold wages from its employees without due process of law." Complaint, ¶ 32. At the motion to dismiss stage, the Court must accept this allegation as true. Hynes' request for dismissal on this ground is denied.

THEREFORE, Defendant Daniel W. Hynes' Motion to Dismiss (d/e 14) is DENIED. Defendant Hynes is directed to answer Plaintiff's Complaint on or before January 12, 2007. The matter is referred to Magistrate Judge Byron G. Cudmore for further scheduling.

IT IS THEREFORE SO ORDERED.

ENTER:   December 18, 2006.

FOR THE COURT:

                                                s/ Jeanne E. Scott
                                            JEANNE E. SCOTT
                           UNITED STATES DISTRICT JUDGE