**E-FILED**
Tuesday, 10 July, 2007  01:07:21 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOSEPH A. SOTTORIVA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-3118 |
| | ) | |
| ROCCO J. CLAPS, Director of the | ) | |
| Illinois Department of Human Rights, | ) | |
| and DANIEL W. HINES, | ) | |
| Comptroller of the State of Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendant Rocco J. Claps' Motion for Summary Judgment (d/e 18).  Plaintiff Joseph A. Sottoriva, an employee of the Illinois Department of Human Rights (the Department), filed the pending three-count Complaint (d/e 1) against Rocco J. Claps, Director of the Department, and Daniel W. Hynes, Comptroller of the State of Illinois, after money was involuntarily withheld from his paychecks.[1]  Defendant

---

[1]The Court notes that while the Complaint references Defendant Daniel Hines, the correct spelling of the Comptroller's name is Hynes.  For consistency, the Court will use the correct spelling throughout this Opinion.

Hynes filed a Motion to Dismiss (d/e 14) pursuant to Federal Rule of Civil Procedure 12(b)(6), which this Court denied in an Opinion (d/e 23) dated December 18, 2006. Defendant Claps filed the instant Motion for Summary Judgment on November 8, 2006. By Opinion (d/e 24) dated December 21, 2006, this Court continued Plaintiff's obligation to respond to Claps' Motion for Summary Judgment to allow Plaintiff to conduct discovery pursuant to Fed. R. Civ. P. 56(f). Plaintiff filed his Response to the Motion for Summary Judgment (d/e 28) (Plaintiff's Response) on April 20, 2007, and Defendant Claps has filed a Reply to Plaintiff's Response to Motion for Summary Judgment filed by Rocco J. Claps (d/e 31) (Defendant's Reply). Thus, the matter is ripe for determination. For the reasons set forth below, the Motion for Summary Judgment is allowed, in part, and denied, in part.

<u>BACKGROUND</u>

The following facts are undisputed. Sottoriva is an employee of the Department who is also a member of the United States Army Reserve. He was called to active military duty from January 17, 2003, to August 17, 2004. He continued to receive his state paycheck while on active duty. Under State of Illinois Executive Order 10 (2001), which was in effect at

2

the time Sottoriva began active duty, any full-time employee of the State of Illinois who is a member of the Army Reserve and is mobilized to active duty in response to the September 11, 2001, terrorist attacks shall continue to receive his or her regular compensation as a State employee, plus any health insurance and other benefits, minus the amount of his or her base pay for military activities.[2]

The parties agree that Sottoriva was overpaid by the Department while on active duty. As early as April 4, 2003, Department personnel began calculating the difference between Sottoriva's State and military pay internally. On September 15, 2003, Michelle Dirksen, an employee of the Department, sent Sottoriva a memorandum containing an example of how the Department figured the pay difference each pay period. When Sottoriva's pay was issued, amounts were deducted to cover insurance

---

[2]Plaintiff attached as exhibits to his Complaint both Illinois Executive Order 10 (2001) and Illinois Executive Order 2003-6. Executive Order 10 (2001) was signed by Governor George Ryan and became effective September 18, 2001. Executive Order 2003-6 was signed by Governor Rod Blagojevich on February 23, 2003. Defendant Claps in his Motion for Summary Judgment relies only on Executive Order 2003-6. In his Reply, Claps asks the Court to substitute reference to Executive Order 10 (2001), which was in effect at the time Plaintiff began active duty, for any references to the later signed Executive Order 2003-6 in his Motion for Summary Judgment. Plaintiff has not filed any objection to this request, and the Court notes that the relevant portions of Executive Order 10 (2001) and Executive Order 2003-6 are identical. Thus, the Court will allow Defendant Claps' request to substitute.

3

benefits, deferred compensation, and taxes.  In pay periods when Sottoriva's military pay exceeded his state pay, he was required to give back to the Department his entire state pay for the period.   However, because the deductions had been applied, Sottoriva's remaining net pay for these periods was insufficient to meet his repayment obligation and, as a result, he acquired a deficit.   For pay periods in which his state pay exceeded his military pay, Sottoriva was required to return the amount of his military pay for the period.   It appears from the record that, because of the deductions that were applied, this generally also resulted in a deficit.

On April 23, 2004, Dirksen e-mailed Sottoriva in an attempt to respond to questions he had regarding the pay issue.   Dirksen informed Sottoriva that he had remained on the Department's payroll for the entire time he was on active duty, receiving "a full paycheck minus what [he] owe[d] back to the State each pay period . . . ."   Plaintiff's Response, Appendix A, SOT 00128, Ex. F.[3]  Dirksen explained that, because Sottoriva received State benefits during the time he was on active duty, he never paid

---

[3]The Court notes that Plaintiff's Appendix of Documents, Attachments Nos. 1 and 2 to Plaintiff's Response, does not contain sequential page numbers.  Many of the documents contain bates stamp numbers.  Plaintiff cites to these bates stamp numbers, and the Court will do so as well.  Unfortunately, however, the documents have not been filed in bates stamp order, but rather in chronological order, making it difficult to efficiently locate documents by citation.

back the full amount he owed the State in each pay period, resulting in an increasing deficit.   Dirksen estimated that Sottoriva owed the State approximately $10,800.00 at that point.  On April 26, 2004, Dirksen sent another e-mail, indicating that if Sottoriva returned to work at the Department on July 1, 2004, he would, at that point, owe $17,982.47. Plaintiff's Response, Appendix A, SOT 00277.   Dirksen suggested repayment at the rate of $200.00 a pay period for 89.9 pay periods, which equates to approximately four years.

Sottoriva was released from active duty on August 17, 2004, and returned to work at the Department.   Sottoriva's position with the Department is a union position and is subject to a collective bargaining agreement.   On August 30, 2004, Sottoriva filed a union grievance concerning the overpayment issue.  Plaintiff's Response, Appendix A, SOT 00077-80, Ex. 12.  The union initiated Sottoriva's grievance on September 1, 2004, asserting that Sottoriva detrimentally relied on the Department's representations that he was being paid the correct amount and asking that the Department be barred from seeking reimbursement of the alleged deficit.  Plaintiff's Response, Appendix A, SOT 00001-02, Ex. 13.

Defendant Claps asserts that Sottoriva's grievance was resolved.

Memorandum of Law in Support of Defendant's Motion for Summary
Judgment (d/e 19) (Defendant's Memorandum), p. 4, Undisputed Material
Fact 6.  In doing so, Claps relies on a document entitled "Pre-Arb Grievance
Resolution," which is dated May 23, 2005.  Id., Ex. 4.  Sottoriva disputes
Claps' assertion that the grievance was resolved.  Plaintiff's Response, p. 6.
According to Sottoriva, "[t]he grievance was only resolved as to the legal
obligation to repay and was never resolved as to the amount of the DHR
claim of overpayment."  Id.  The Court notes that the very brief Pre-Arb
Grievance Resolution states in substantive part the following: "COMMENT:
Resolved: The grievant and the agency shall work out a re-payment plan for
the overpayment by July 1, 2005, w/o P & P."  Defendant's Memorandum,
Ex. 4.

In June 2005, in preparation for the creation of the payment plan,
Sottoriva's union representative contacted the Department requesting
documentation relating to the formula used to determine Sottoriva's
military pay, the amount Sottoriva was paid, and what he should have been
paid, as well as an accounting of what Sottoriva had already repaid.  By
letter dated August 24, 2005, Sottoriva, through counsel, indicated to the
Department that he believed that the amount of principal that was to be

repaid needed to be calculated or that a hearing should be held to determine the amount.  The Department's Chief Legal Counsel Ray Luna responded by letter dated August 26, 2005, stating that the amount of overpayment and information regarding the manner in which it was calculated had been forwarded to Sottoriva's union.  The letter further expressed Luna's belief that the union had agreed to the overpayment amount.  Luna suggested that counsel contact Sottoriva's union representative to obtain the information.

Chief Fiscal Officer of the Department Lynne Turner then prepared a wage deduction repayment plan for Sottoriva, dated August 30, 2005.  <u>Plaintiff's Response</u>, Appendix A, SOT 00064.  The repayment plan set out the amount owing to the State as $24,105.03.  The repayment plan set out four possible deduction options as follows: Option 1 – "A voluntary lump sum amount from the employee, followed by monthly payroll deductions"; Option 2 – "Voluntary payroll deduction 24 months @ 1,000 month (estimate)"; Option 3 – "Voluntary payroll deduction 36 months @ 669 per month (estimate)"; and Option 4 – "Involuntary withholding per the Comptroller's office, which will withhold 15%-25% of disposable income from wages, and any retirement, pension, state income taxes, or travel reimbursement payments."  <u>Id</u>.

On September 1, 2005, a meeting was held that was attended by Department Chief Counsel Luna, Department Chief Financial Officer Turner, union representative Nancy Kavanaugh, Sottoriva, and his attorney Carl Draper.  At the meeting, Sottoriva was presented with the repayment plan that Turner had created.  According to the repayment plan document, the pre-arbitration resolution authorized the Department to begin a repayment plan on July 1, 2005.   Draper informed the Department personnel that Sottoriva disputed the amount that the Department claimed he owed.   During the meeting, Sottoriva requested documentation supporting the calculation of the Department's claim of overpayment; however, none was provided at that time.  Copies of Sottoriva's pay records were provided to Nancy Kavanaugh on September 6, 2005.

On September 6, 2005, Draper wrote a letter to Luna on Sottoriva's behalf, asserting that it was unfair for the Department to expect Sottoriva to enter into a payment agreement before he was able to confirm the amount due.  Plaintiff's Response, Appendix B, SOT 00103-04.  Luna responded by letter dated September 13, 2005.  Plaintiff's Response, Appendix B, SOT 00069.  Luna's letter stated that "the Department is in no position to compromise, settle or negotiate the amount owed by Joe

Sottoriva." <u>Id</u>.   According to the letter, "[b]ecause Joe did not take voluntary payroll deduction Option 1, 2, or 3, which was [sic] presented at our September 1, 2005, meeting, Option 4 (Involuntary withholding) will be exercised by the Department." <u>Id</u>.

On September 15, 2005, Claps submitted an involuntary withholding request to Comptroller Hynes.   <u>Plaintiff's Response</u>, p. 14, Additional Material Fact No. 29; <u>Defendant's Reply</u>, p. 7 (conceding but deeming immaterial Plaintiff's Additional Material Fact No. 29) ; <u>see also</u> <u>Plaintiff's Response</u>, Appendix B, SOT 00324.  The withholding request sets forth an original claim amount of $24,105.03.   <u>Plaintiff's Response</u>, Appendix B, SOT 00324. Under a section entitled "Procedural Requirements," the request reads as follows: "Notification Type 03; Type of Hearing Offered 02; Statement of Outcome 02; Date of Final Determination of Debt 8/30/05." <u>Id</u>.  The parties agree that this indicates that a hearing had been offered and that the matter had been resolved by conciliation.  <u>Plaintiff's Response</u>, p. 14, Additional Material Fact No. 29; <u>Defendant's Reply</u>, p. 7 (conceding but deeming immaterial Plaintiff's Additional Material Fact No. 29).  Defendant Claps concedes that "[p]rior to September 1, 2005, there was still a dispute about the amount at issue and there was no plan in place

pursuant to the grievance resolution . . . ."  <u>Plaintiff's Response</u>, p. 14,

Additional Material Fact No. 30; <u>Defendant's Reply</u>, p. 7-8 (conceding but

deeming immaterial Plaintiff's Additional Material Fact No. 30).

On September 26, 2005, the Office of the Comptroller Collections

Unit sent Sottoriva a notice regarding payment withholding for the

Department of Human Rights.   <u>Plaintiff's Response</u>, Appendix B, SOT

00071.  The notice stated that the Department had advised the Comptroller

that Sottoriva owed money for salary overpayment.   <u>Id</u>.   The notice

informed Sottoriva that, as a result, the Comptroller was withholding

$435.38 from Sottoriva's payment of $1,575.59.  <u>Id</u>.  The notice continued

as follows:

> If you have already contacted the claiming agency and still do
> not agree with the claim, you may file a protest by writing the
> Office of the Comptroller . . . .  The Protest should contain a
> letter describing your reasons for protest and any documents or
> receipts that support your position. . . .  If you do not file a
> written protest within 30 days from the date of this notice, the
> withheld amount will be sent to Human Rights Dept as
> payment on the claim.

<u>Id</u>.  There was no indication in the notice as to the total amount that the

Department claimed Sottoriva owed.

Sottoriva submitted a written protest.  <u>Plaintiff's Response</u>, Appendix

B, SOT 00072-75.  The Comptroller asked the Department to provide documentation supporting its claim.  The Department sent a letter, dated December 2, 2005, with accompanying documents, denying the allegations of the protest.  <u>Plaintiff's Response</u>, Appendix B, SOT 00354-65.  Based on the Departments' submission, the Collections Unit informed Sottoriva by letter dated December 14, 2005, that the decision was made to forward the money that had been withheld to the Department.  <u>Plaintiff's Response</u>, Appendix B, SOT 00351.  The letter directed that should Sottoriva wish to dispute the decision, he should contact the Department.  <u>Id</u>.  Sottoriva, through counsel, did so by letter dated December 15, 2005.  <u>Plaintiff's Response</u>, Appendix B, SOT 00352.  Sottoriva's letter characterized both the Department's explanation and its calculations as "inaccurate" and stated that he was requesting a hearing on the matter.  <u>Id</u>.  Luna responded in a brief letter, dated December 22, 2005, that the Department "has no further comment."  <u>Plaintiff's Response</u>, Appendix B, SOT 00391.

Sottoriva then continued to protest the withholding with the Office of the Comptroller.  By letter dated February 17, 2006, the Comptroller's Chief Counsel Whitney Rosen informed Luna that the Office of the Comptroller was "concerned about the adequacy of the Department's

proceedings held to establish the amount of debt owed by Mr. Sottoriva."

<u>Plaintiff's Response</u>, Appendix B, SOT 00094.  Given that concern, Rosen

informed Luna that the Comptroller was removing the Department's claim

from the offset system.  Rosen stated: "This Office will reestablish the claim

upon the Department's demonstration that due process and an opportunity

to be heard was provided to the debtor in establishment of the amount of

the claim."  <u>Id</u>.  By letter dated March 14, 2006, Luna asked Rosen to

vacate her decision and reinstate the Department's claim.   <u>Plaintiff's</u>

<u>Response</u>, Appendix B, SOT 00119-25.

On March 27, 2006, Luna sent an e-mail to Lynne Turner, with a

copy to Claps, as follows:

> I just spoke w/the Chief Counsel, Ofc of the Comptroller.
> She is saying there may be another way of getting the money
> from Joe instead of Offset; in other words, instead of going thru
> the Comptroller.
> Do you know of another way?
> Thanks.

<u>Plaintiff's Response</u>, Appendix B, SOT 00006.  Rosen sent a letter to Luna,

dated April 7, 2006, which stated in substantive part as follows:

> This letter is in response to your correspondence dated March
> 14, 2006.   I have reviewed the documentation that you
> provided.   I also further consulted with the Office of the
> Attorney General.  As we discussed on the telephone, this Office

remains concerned that the Department has not made a final administrative determination of the amount of Mr. Sottorriva's [sic] debt, including adequate opportunity to establish the debt and notice of appeal rights.

You indicated concern with the Department's capacity to provide an appropriate hearing in this matter. Perhaps the Department could pursue additional proceedings under the collective bargaining agreement as a forum to adequately establish the amount of Mr. Sottoriva's debt.

<u>Plaintiff's Response</u>, Appendix B, SOT 00095.

At some point, the Department decided to recoup its money from Sottoriva internally. <u>Plaintiff's Response</u>, Ex. 4, <u>Deposition of Lynne Marie Turner (Turner Dep.)</u>, p. 105-09. The Department did this by subtracting the amount that had been withheld by the Comptroller, $438.00, from Sottoriva's pay rate before certifying his pay to the Comptroller for payroll. <u>Id</u>. On May 2, 2006, at 3:10 p.m., Turner informed Sottoriva of this withholding in an e-mail that states as follows: "your new payroll withholding will begin with the 5.14.06 paycheck in the amount of $438.00 per check. This amount is equivalent to the amount the Comptroller withheld. The withholding will continue until the debt is paid in full." <u>Plaintiff's Response</u>, Appendix B, SOT 00612. At 3:32 p.m. that same day, Bobbie Wanzo, a deputy director with the Department, sent an e-mail to

Turner with copies to Claps and Luna which stated as follows:

> Lynne,
>
> Thanks for the information. I am sure that Joe will discuss this with his attorney but, again, I would like to remind you that any communication or discussion that we have on this issue should be with Joe and the union and not with Joe's attorney. This is the result of the union grievance. The union represents him on this issue not the attorney. Thanks.

Id. At 4:00 p.m. on that same day, Wanzo sent another e-mail to Turner that was copied to Claps and Luna that stated: "Just thinking. If we are contacted by the Attorney again, I think we should have a quick meeting just to make sure that we are all on the same page and that Rocco is comfortable with our position. Thanks." Id., SOT 00011.

On May 14, 2006, the Department issued Sottoriva a paycheck at a base pay of $1,867.50, despite the fact that his scheduled base pay was $2,305.05. Plaintiff's Response, p. 20, Additional Material Fact No. 59; Defendant's Reply, p. 12 (conceding but deeming immaterial Plaintiff's Additional Material Fact No. 59). According to Turner, she certified the payroll that contained this lower pay amount for Sottoriva by signing a computerized payroll certification containing the lower amount, which allowed the Department to bypass the Comptroller's system. Turner Dep.,

p. 152-54.

Plaintiff filed the instant Complaint on June 7, 2006, together with a Motion for Preliminary Injunction (d/e 2).  The Motion for Preliminary Injunction was denied as moot after the parties entered into a Joint Stipulation (d/e 12) providing for the cessation of withholding any amounts from Sottoriva's paycheck in repayment of the disputed debt until final resolution of the instant case.  Text Order, dated July 11, 2006.  At that point, the Department had withheld $1,314.00.  Plaintiff's Response, p. 21, Additional Material Fact No. 64; Defendant's Reply, p. 13 (conceding but deeming immaterial Plaintiff's Additional Material Fact No. 64).

ANALYSIS

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party has the initial burden of demonstrating the absence of a

15

genuine issue of material fact and that judgment as a matter of law is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  When a properly supported motion for summary judgment has been made, the party opposing summary judgment may not merely rest on the pleadings but must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "A party must present more than mere speculation or conjecture to defeat a summary judgment motion."  Liu v. T & H Machine, Inc., 191 F.3d 790, 796 (7th Cir. 1999).  The Court must consider the evidence in the light most favorable to the non-moving party, here Sottoriva, and draw all reasonable inferences in his favor.  See Anderson, 477 U.S. at 255.

Sottoriva's Complaint alleges three counts against Defendant Claps, including a request for an injunction prohibiting the withholding of any wages or sums of money due him without due process of law (Count I), a due process claim for money damages (Count II), and a claim for relief under the Illinois State Finance Act, 30 ILCS 105/1, et seq., (Count III).[4]

---

[4]While Count I is entitled "Injunctive and Declaratory Relief," Plaintiff's prayer for relief seeks only injunctive relief.  Moreover, while ¶ 33 of the Complaint seeks relief extending to all employees of the State of Illinois and ¶ 34 asserts that this Court should certify a class of persons affected by the challenged practices, Plaintiff has failed to demonstrate that the proposed class meets all of the requirements of Federal Rule of Civil Procedure 23(a) and the requirements in one of the three subsections of Rule

The Complaint states that Claps is being sued in his official capacity for matters concerning declaratory and injunctive relief and in his individual capacity for matters involving compensatory damages.  Complaint, ¶ 2. Defendant Claps asserts that he is entitled to summary judgment on all of Sottoriva's claims.  As set forth below, the Motion for Summary Judgment is allowed, in part, and denied, in part.[5]

A.   COUNT I

In Count I, Sottoriva seeks an injunction prohibiting the withholding of any wages or sums of money due him without due process of law.  Claps contends that he is entitled to summary judgment on Sottoriva's request for injunctive relief under two theories.  Neither argument is persuasive.

First, Claps asserts that he is entitled to summary judgment on Count I based on the fact that, pursuant to the Joint Stipulation and this Court's

---

23(b).  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613-14 (1997); Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993).  The Court further notes that at all times subsequent to the filing of the Complaint, Plaintiff has treated the matter as an individual claim, rather than a class action.  Therefore, class certification is not proper, and the Court will treat Count I as an individual claim for injunctive relief.

[5]Claps briefly asserts that he is entitled to summary judgment in his favor on the question of attorney's fees.  Given the disposition of the instant Motion, the Court finds this argument to be premature, and Claps' request for summary judgment on the issue is denied as premature.

July 11, 2006, Text Order, the Department is not currently withholding any amounts in repayment of Sottoriva's debt.  Thus, Claps contends that any equitable relief would be retrospective and barred by the Eleventh Amendment.  This Court's July 11, 2006, Text Order, which adopts the parties' Joint Stipulation, directs that "absent further application to this Court, Defendants, their officers, employees, and agents shall not, during the pendency of this action, withhold from the wages of Joseph A. Sottoriva, any amounts in repayment of the overpayment challenged in this action, until and unless there is a final resolution of this cause in Defendants' favor."  Text Order dated July 11, 2006.  By their express terms, both the Joint Stipulation and the Court's July 11, 2006, Text Order are limited to the pendency of this action.  The fact that Plaintiff has attained temporary, interlocutory relief does not bar his claim for prospective injunctive relief.  Claps' request for summary judgment based on the theory that there is an absence of an on-going violation is denied.

As a second basis for summary judgment, Claps asserts that Sottoriva cannot show the essential elements required for injunctive relief.  Claps relies on Collins v. Hamilton, which provides as follows:

Where a permanent injunction has been requested at summary

18

judgment, we must determine whether the plaintiff has shown:
(1) success, as opposed to a likelihood of success, on the merits;
(2) irreparable harm; (3) that the benefits of granting the
injunction outweigh the injury to the defendant; and, (4) that
the public interest will not be harmed by the relief requested.

Collins, 349 F.3d 371, 374 (7th Cir. 2003). Claps asserts that Sottoriva

cannot show success on the merits or that the public interest would be

harmed by the relief requested. As an initial matter, the Court notes that

this matter is before it on Defendant Claps' Motion for Summary Judgment.

Unlike Collins, the Plaintiff in the instant case has not moved for summary

judgment. Thus, Claps has the initial burden of demonstrating the absence

of a genuine issue of material fact. If he does so, Sottoriva, as the party

opposing summary judgment, must set forth specific facts showing that a

genuine issue for trial exists. Fed. R. Civ. P. 56(e).

Claps' contention that Sottoriva cannot demonstrate success on the

merits is undeveloped, and the Court finds that Claps fails to meet his

initial burden on this issue. As the Court will discuss in depth in subsection

B, issues of fact prevent the Court from determining at this point that due

process was satisfied. In addition, all of Claps' arguments relating to public

harm deal with harm that would result from injunctive relief that applies not

only to Sottoriva, but to all State of Illinois employees. As set forth above,

Plaintiff has failed to demonstrate that class certification is proper, and the Court will treat Count I as an individual claim. Given this approach, Claps failed to demonstrate that public harm will result from the relief requested. Claps' request for summary judgment in his favor on Count I is denied.

B.    COUNT II

Count II alleges a due process claim against Claps seeking money damages. Sottoriva asserts that Claps has caused him to lose wages and suffer other consequential damages by withholding his wages without providing due process of law. Claps asserts that the undisputed facts show that there was no due process violation and, alternatively, if Sottoriva's due process rights were violated, Claps is nevertheless entitled to qualified immunity on this claim. As set forth below, these arguments are unpersuasive.

The Due Process Clause of the Fourteenth Amendment forbids a state from depriving any person of life, liberty, or property without due process of law. U.S. CONST. Amend. XIV, § 1. This Constitutional guarantee encompasses both procedural and substantive rights. Sottoriva bases his claim on procedural due process. The requirement of "[p]rocedural due process imposes constraints on governmental decisions which deprive

20

individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."   <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332 (1976).  The Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest."  <u>Id</u>. at 333.  Claps asserts that he is entitled to summary judgment because the union grievance process that Sottoriva engaged in satisfied due process and, alternatively, that due process does not require a pre-deprivation hearing under the circumstances of the instant case.  The Court addresses each argument in turn, and then turns to the applicability of qualified immunity.

### 1.   <u>Union Grievance as Providing Due Process</u>

Claps asserts that the union grievance procedure satisfied due process in that it provided Sottoriva with notice and a meaningful opportunity to be heard pre-deprivation.  Sottoriva concedes, and the Court acknowledges, that a grievance procedure under a collective bargaining agreement can, in some circumstances, satisfy due process.  <u>See</u>, <u>e.g.</u>, <u>Hudson v. City of Chicago</u>, 374 F.3d 554, 563 (7th Cir. 2004); <u>Buttitta v. City of Chicago</u>, 9 F.3d 1198 (7th Cir. 1993).  In the instant case, it is undisputed that Sottoriva's grievance did not progress past the pre-arbitration point.

21

However, there is a factual dispute as to what issues were addressed and resolved by the grievance proceedings.[6]   Claps asserts that Sottoriva's grievance was resolved in total, as evidenced by the document entitled "Pre-Arbitration Grievance Resolution."  Sottoriva asserts that the grievance was only resolved as to the legal obligation to repay and was never resolved as to the amount of the overpayment.  The brief Pre-Arb Grievance Resolution does not expressly state that the amount owed had been resolved.  It states in substantive part only as follows: "COMMENT: Resolved: The grievant and the agency shall work out a re-payment plan for the overpayment by July 1, 2005, w/o P & P."  Defendant's Memorandum, Ex. 4.  Furthermore, the involuntary withholding request that Claps submitted on September 15, 2005, indicated that August 30, 2005, was the date of the final determination of the debt and Defendant Claps concedes that, prior to September 1, 2005, there was still a dispute about the amount at issue.  See Plaintiff's Response, Appendix B, SOT 00324.  Viewing the evidence in the light most favorable to Sottoriva, a genuine issue of fact exists as to the

---

[6]The instant case is distinguishable from Hudson, upon which Defendant Claps relies.  Hudson, 374 F.3d 554.  In Hudson, the Seventh Circuit held that the existence of a grievance procedure may be sufficient to satisfy due process, even if the employee fails to avail himself of the available protections.  Id. at 563-64.  In the present case, Sottoriva clearly availed himself of the available grievance procedures; the issue in the instant case is the sufficiency of the proceedings.

scope of the grievance process and resolution.  Claps is not entitled to summary judgment on this basis.

### 2.    Necessity of Pre-Deprivation Hearing

Claps contends that due process does not require a pre-deprivation hearing under the circumstances of the instant case.  Claps first asserts that Sottoriva has no Constitutionally-protected property interest in retaining amounts by which he was overpaid, and thus, no process was required.  This argument is misplaced.  The Department did not try to recoup an overpayment.  The undisputed facts show that, through the offset procedures and again beginning in May 2006, the Department withheld a portion of Sottoriva's current wages in an attempt to recover the prior amount owed.  Clearly, Sottoriva has a property interest in his current wages.  Sniadach v. Family Finance Corp., 395 U.S. 337, 340 (1969); see also Toney v. Burris, 881 F.2d 450, 453-54 (7th Cir. 1989); Toney v. Burris, 699 F.Supp. 687, 690-91 (N.D. Ill. 1988) ("when the state, through its procedures, withholds wages of its employees to pay their personal unpaid debts and delinquent obligations, it is engaged in a taking that must be done in a manner that comports with the fairness concept of 'due process of law'").  Claps' argument fails, and the Court turns its analysis to an inquiry

23

of what process was due Sottoriva.

The Seventh Circuit has consistently held that due process does "not confer a right to a predeprivation hearing in every case in which a public officer deprives an individual of liberty or property."  Holly v. Woolfolk, 415 F.3d 678, 680 (7th Cir. 2005).  One situation in which the Supreme Court has determined that pre-deprivation process is not necessary is when the deprivation results from random and unauthorized acts by a state employee.  The Supreme Court has held that a random and unauthorized deprivation of property by a state employee does not constitute a violation of procedural due process as long as the state provides a meaningful post-deprivation remedy for the loss.  Parratt v. Taylor, 451 U.S. 527 (1981), *overruled in part on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986).  In Parratt, the Supreme Court distinguished between a situation involving a tortious loss resulting from a random and unauthorized act by a state employee and a situation in which the loss results from some established state procedure.  Id. at 541.  In the former, the State cannot predict precisely when the loss will occur, and thus, "[i]t is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place."  Id.  The Court went on to note as follows: "The

24

loss of property, although attributable to the State as action under 'color of law,' is in almost all cases beyond the control of the State.  Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation."  Id.

Claps contends that, under Sottoriva's version of events, the acts at issue are random and unauthorized and thus fall under the Parratt exception.  Claps further asserts that post-deprivation process may be sufficient even in cases in which the deprivation is not the result of random and unauthorized acts.  This argument relies on recent Seventh Circuit precedent which notes that "[i]n a variety of cases not limited to ones in which the seizure is random and unauthorized, predeprivation process has not been required."  Ellis v. Sheahan, 412 F.3d 754, 758 (7th Cir. 2005) (collecting cases).  The Seventh Circuit has stated as follows:

> Nor does it make a lot of sense to say that when a postdeprivation hearing not only is feasible but will give the deprived individual a completely adequate remedy, as is true in this case, due process requires a right to a predeprivation hearing as well.  Such a rigid approach would be inconsistent with the spirit, at least, of the sliding-scale approach of Mathews, which requires comparison of the costs and benefits of alternative remedial mechanisms.

Id.  Thus, under either scenario, the Court must consider the adequacy of

post-deprivation process that existed in the instant case.  In assessing the adequacy of process provided, the Court must apply the four-part balancing test set forth in <u>Mathews v. Eldridge</u>.  The factors to be balanced under <u>Mathews</u> are: (1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest under the challenged procedures; (3) the probable value of additional safeguards; and (4) the cost to the government of such additional safeguards.  <u>Id</u>.

Clearly, Sottoriva's interest in his current wages is high; however, the Court notes that both challenged actions resulted in reductions in his wages that were no greater than the rate allowed under Illinois Garnishment Laws. Claps asserts that, assuming Sottoriva was not afforded pre-deprivation process, full, retroactive relief was available through the grievance procedures of the collective bargaining agreement, the Comptroller's rules and regulations, and access to the Illinois Court of Claims pursuant to 705 ILCS § 505/8, which rendered the risk of erroneous deprivation almost non-existent.  The Court examines each challenged act together with the post-deprivation process that was available.

The first challenged act is Claps' September 15, 2005, submission of an involuntary withholding request to Comptroller Hynes.  The parties

agree that the withholding request indicates that a hearing had been offered and that the matter had been resolved by conciliation.  Claps contends that this information is true; Sottoriva contends that it is false.  As previously discussed, questions of fact exist as to the scope of the grievance resolution.  However, under the undisputed facts of the instant case, Sottoriva actually obtained post-deprivation relief from this alleged violation through the Office of the Comptroller.  Sottoriva protested the offset, and eventually, due to concerns about the adequacy of process provided by the Department, the Office of the Comptroller released the funds at issue to Sottoriva.  Therefore, the process available was sufficient to rectify the first alleged due process violation.

The second challenged action is the certification of Sottoriva's pay at a level below his actual salary in an attempt to collect the debt internally.  The undisputed evidence shows that the Office of the Comptroller has no procedures in place to allow an employee to protest his agency's certification of his base pay.  Plaintiff's Response, Ex. 6, Deposition of Steven Valasek, p. 83-84.  Thus, Claps is not entitled to summary judgment under the theory that post-deprivation process was available through the Office of the Comptroller.  Furthermore, Claps' assertion that Sottoriva could have

challenged this second alleged violation through the grievance procedures of his collective bargaining agreement or the Illinois Court of Claims is undeveloped. Claps has presented only portions of the applicable collective bargaining agreement and has failed to identify any record evidence of the grievance procedures. While a grievance procedure under a collective bargaining agreement can, in some circumstances, satisfy due process, this Court cannot assess the protections available in the instant case without evidence to establish what they are. See Hudson, 374 F.3d at 563.

Claps' reference to the Illinois Court of Claims is similarly undeveloped. His initial Memorandum merely cites in a footnote the statute setting out permissible causes of action against the State in the Court of Claims and does not expand on the issue. The Court notes that the Seventh Circuit has held that, under certain circumstances, a post-deprivation lawsuit fails to provide the opportunity to be heard at a meaningful time and in a meaningful manner as required to satisfy due process. See Baird v. Board of Educ. for Warren Community Unit Sch. Dist. No. 205, 389 F.3d 685, 690-92 (7th Cir. 2004). On the record before it, the Court cannot assess the value or cost of additional safeguards. However, because Claps has failed to identify any procedural protections

that applied to the decision to certify a lower pay for Sottoriva, Claps has failed to show that he is entitled to summary judgment based on the argument that the process available was sufficient under the <u>Mathews</u> balancing test.

Finally, Claps asserts that summary judgment is appropriate on the due process claim based on the fact that "there are no current or planned future deductions from plaintiff's paycheck prior to a final resolution of this matter." <u>Defendant's Memorandum</u>, p. 14. This argument is similarly unavailing. Count II seeks monetary damages for past due process violations. The fact that Defendant Claps has voluntarily agreed not to withhold from Sottoriva's wages any amounts in repayment of the challenged overpayment during the pendency of this action provides no basis for summary judgment in Claps' favor.

### 3.   Qualified Immunity

Qualified immunity shields "[g]overnment actors performing discretionary functions" from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Sallenger v. Oakes</u>, 473 F.3d 731, 739 (7th Cir. 2007). Claps asserts that even if  Sottoriva's due

process rights were violated, he is entitled to qualified immunity from Sottoriva's suit for money damages.  To overcome qualified immunity, Sottoriva must demonstrate: (1) a violation of a constitutional right (2) that is clearly established at the time of the alleged violation, so that a reasonable public official would have known that his conduct was unlawful.  Green v. Butler, 420 F.3d 689, 700 (7th Cir. 2005); see also Saucier v. Katz, 533 U.S. 194, 200-02 (2001).  As discussed above, Sottoriva has satisfied the first prong by demonstrating, at least at this stage of the proceedings, the violation of his right to due process.  Therefore, the Court must determine whether Sottoriva has demonstrated that, in May 2006, a reasonable official would have known that certifying a lesser base pay for Sottoriva, in order to circumvent the Comptroller's regulations, would be unlawful. To meet this burden, Sottoriva "may point to closely analogous cases demonstrating that the conduct is unlawful or demonstrate that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution."  Green, 420 F.3d at 700 (internal quotations and citation omitted).

Sottoriva relies on the series of Seventh Circuit and Northern District of Illinois cases in the matter of Toney v. Burris.  A brief summary of the

history of the <u>Toney</u> litigation is instructive.  Toney was a state of Illinois employee whose paychecks were being offset to recoup the balance due the State of Illinois on his student loans.  Toney filed a Complaint pursuant to 42 U.S.C. § 1983 against Illinois Comptroller Roland Burris, alleging that the offset provision violated due process.  The District Court certified a class of all persons who have had or will have their funds withheld by the Comptroller under the State Comptroller Act.  <u>See</u> <u>Toney v. Burris</u>, 650 F.Supp. 1227 (N.D. Ill. 1986).  The Court then granted Toney's motion for summary judgment, finding the relevant statute unconstitutional on its face and as applied.  <u>Id</u>. at 1243.

Burris appealed, and the Seventh Circuit remanded based on the fact that new regulations had been promulgated which may have resolved the Constitutional issues.  <u>Toney v. Burris</u>, 829 F.2d 622 (7th Cir. 1987).  In doing so, the Seventh Circuit noted that Toney and all class members had a property interest in funds that the Comptroller had or could offset.  <u>Id</u>. at 625.

On remand, the District Court recognized that "when the state, through its procedures, withholds wages of its employees to pay their personal unpaid debts and delinquent obligations, it is engaged in a taking

31

that must be done in a manner that comports with the fairness concept of 'due process of law.'" Toney, 699 F.Supp. at 690-91.  The Court further noted, "It has long and firmly been established that the procedure followed must require that before a taking occurs, both an adequate notice and a meaningful opportunity for the employee to be heard in opposition to it is afforded." Id. at 691.  With these principles in mind, the Court examined the procedures applicable to Toney's case under the standard set out by the Supreme Court in Mathews, 424 U.S. at 319.  The District Court first noted the procedures employed by the agency seeking to collect from Toney, the Illinois State Scholarship Commission and then the regulations governing the Office of the Comptroller.  The Court determined that the regulations and procedures as a whole passed the Mathews test and, thus, provided Toney with due process.  Toney appealed.

In this second appeal, the Seventh Circuit addressed the adequacy of the procedures at issue under Mathews.  Toney, 881 F.2d 450.  The Seventh Circuit Opinion sets out the applicable versions of the Comptroller Act and the accompanying regulations as they related to offsets by the Comptroller. Id. at 452-53.  Those versions are in relevant part identical to the statute and regulations at issue in the present case.  The Seventh Circuit

Opinion also recited the regulations governing the Illinois State Scholarship Commission in its collection of defaulted loans.  Id. at 453.  In analyzing Toney's arguments, the Seventh Circuit determined that the Illinois State Scholarship Commission regulations provided "all the procedural protections one could reasonably ask for.  Before a request is even sent to the Comptroller by the [Illinois State Scholarship Commission] the borrower has been given ample notice and opportunity to be heard."  Id. The Court further noted that the Illinois State Scholarship Commission regulations provided a debtor with a "full panoply of procedural protections and opportunity for judicial review."  Id. at 454.  The Court concluded that "[o]ne opportunity for access to the full range of procedural protections is adequate to comport with due process," and refused to "require the Comptroller to duplicate the [Illinois State Scholarship Commission]'s efforts."  Id.  The Court noted, however, that many members of the certified class would have debts from agencies other than the Illinois State Scholarship Commission.  Thus, the Court remanded the matter a second time, for a determination of whether the order certifying the class remained appropriate.

On remand, the District Court examined the regulations governing the

Comptroller and the rules of the Comptroller's Office.  Toney v. Burris,

1990 WL 91451, *2-3 (N.D. Ill. June 25, 1990).  The Court determined:

> the Comptroller's procedural protections ensure that any debt
> owed to any state agency must be established through notice
> and an opportunity to be heard, before an offset can be
> implemented. If an agency fails to follow these procedures, the
> comptroller will not process the offset. These revised procedures
> are available to every potential class member who has the same
> kind of claim as the plaintiff Toney claimed to have had here
> regardless of the state agency involved.  The class as certified
> early in the case would not sustain an injury because the
> amended regulations ensure that due process will be met.

Id. at *3.

Viewing the facts in the light most favorable to Sottoriva, the pre-

arbitration grievance resolution encompassed only the fact of liability and

not the amount owed.  Despite this, Claps certified an offset request stating

that the debt had been established through conciliation.  It is undisputed

that, after the Comptroller's Office rejected the proposed offset based on

concerns about the adequacy of the notice and opportunity to be heard that

had been afforded by the Department, the Department sought a way to

circumvent the Comptroller's procedures.  Viewing the evidence in the light

most favorable to Sottoriva, Claps, without statutory or contractual

authority, approved of the Department's plan to recoup the debt by

certifying a lower base pay for Sottoriva.  Clearly, after the <u>Toney</u> litigation,

a reasonable state official would know that Sottoriva was entitled to at least

one opportunity for notice and an opportunity to be heard before his wages

were subject to offset.  Moreover, the Northern District of Illinois, in the

1990 <u>Toney</u> decision, approved the same Comptroller's procedures that are

at issue here as a vehicle to ensure that any debt owed to a state agency

must be established through notice and an opportunity to be heard.  Under

all of the circumstances of the instant case, a reasonable state official would

have known that it was unconstitutional to certify the lesser pay amount for

Sottoriva in order to collect the debt without regard to the Comptroller's

procedural protections.

      C.    <u>COUNT III</u>

In Count III, Sottoriva raises a claim under the State Finance Act.

Under § 9.03 of the State Finance Act, every payroll voucher must contain

a certification that the payroll sheets are "true, complete, correct and

according to the provisions of law. . . ."  30 ILCS 105/9.03.  The Act further

provides as follows: "To execute knowingly and intentionally a false

certification under Section 9.03 or 9.04 of this Act shall result in removal

from office if done by an officer or discharge if done by an employee."  30

ILCS 105/9.06.  Sottoriva alleges that Claps violated the State Finance Act by submitting falsely certified vouchers for the wages due to Sottoriva. Count III's prayer for relief is as follows: "Sottoriva respectfully prays that this court will enter a declaratory judgment for him against Defendant Rocco J. Claps declaring that the certifications of payroll vouchers for anything other than the full amount of Plaintiff's income is false and that Defendant Rocco J. Claps shall be removed from office." Complaint, p. 11. Sottoriva also seeks an award of attorney's fees and costs.  Claps asserts that Sottoriva's State Finance Act claim is barred by the Eleventh Amendment. The Court agrees.

The Eleventh Amendment bars federal courts from considering claims that state officials violated state law in carrying out their official responsibilities. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984).  In his Response, Sottoriva asserts that Count III is brought against Claps in his individual capacity.  This contention directly contradicts the express language of the Complaint.  Sottoriva's Complaint expressly states that Claps is being sued in his official capacity in matters concerning declaratory and injunctive relief and in his individual capacity for matters involving compensatory damages.  Complaint, ¶ 2.  Count III on its face

seeks only declaratory and injunctive relief not compensatory damages.[7] Thus, on the face of the Complaint, Count III is an official capacity suit that is barred by <u>Pennhurst</u>.  Furthermore, the Court notes that even absent the express language identifying Count III as an official capacity claim, the relief Sottoriva seeks in Count III is not personal in nature, but rather relief that substantially concerns the State of Illinois and its agency, the Department. Therefore, Count III is barred by the Eleventh Amendment, and Claps is entitled to summary judgment in his favor on this count.

THEREFORE, as set forth above, Defendant Rocco J. Claps' Motion for Summary Judgment (d/e 18) is ALLOWED, in part, and DENIED, in part.  Summary judgment is entered in favor of Defendant Claps on Count III.  The Motion is denied in all other respects.

---

[7]The Court notes that Plaintiff's Response asserts that Count III does not seek to remove Claps, but merely identifies a state law that would provide for his automatic removal in the event this Court determined that Claps issued a false certification.  Again, this contention contradicts the express provisions of the Complaint, which prays that Claps be removed from office.  Moreover, even if the Complaint could be read to seek only declaratory relief, summary judgment in favor of Claps would nevertheless be appropriate.  Sottoriva asks that this Court determine whether Claps violated the State Finance Act, but seeks no damages.  In the event that injunctive relief is not sought, there is no identified relief that this Court could grant to remedy Claps' alleged state law violation.

IT IS THEREFORE SO ORDERED.

ENTER:   July 6, 2007.

      FOR THE COURT:

                        _____s/  Jeanne E. Scott_____
                                  JEANNE E. SCOTT
                        UNITED STATES DISTRICT JUDGE